cedure now so interwoven with our system of jurisprudence as to have become almost an inherent and essential part thereof.

Assuming all the facts put in proof by the assignee to be true, and also their permanency and materiality, it still appears that the property in question came to the possession of the respondents before an act of bankruptcy, adjudged under a purchase, for a monied consideration, paid at or about the time, and one not by any means grossly inadequate; that only a part of this property is now in their custody, having been removed therefrom by the legal proceeding involving its title. The respondents swear that they bought it in good faith, and did not know of the mala fides of the vendor, and that they are able to respond to an adverse final judgment upon the question of title. The forty-second section provides generally for the taking possession of the property of the bankrupt. General order thirteen, as recently amended, and undoubtedly so amended and adopted because of the too general terms of the original order to meet vexed questions of possession pendente lite, provides a particular course of procedure in all cases of controverted possession, both when the property has already come to the hands of the marshal as when it is in the hands of the adverse claimant, and the assignee or petitioning creditor seeks its possession. It is a course of procedure in principle familiar to the common law in actions of replevin, and undoubtedly borrowed from it, because of its analogy and fitness. It is an appropriate and just course of procedure. By the bond it requires it makes the provisional custodian careful of the right. With this remedy prescribed, and in a case where no haste is required, where no risk of irretrievable loss is shown or suggested, to change the custody of this property by summary order upon mere motion would be almost to create rather than administer a remedial process.

A review of the bankrupt law as a whole, and of the general orders promulgated under, and in pursuance of it, and to carry its provisions into effect, will show that ample as are the powers vested in the courts and in the judges who are to administer it, these powers are to be exercised as far as may be, and when no special provision is otherwise made, in accordance with settled and well-known forms of judicial procedure. The thirty-second general order provides that the rules of the circuit and supreme courts, respectively, at law and in equity, shall govern the practice and procedure in this court in administering this law. The amendment to this general order empowers this court not to repeal, but to modify these rules, to speed the progress of cases here, with the further power to make special orders to meet the exigencies of a particular case. The tenth section of the act provides for the taking of appeals, and the suing out of writs of error.

The twenty-sixth general order prescribes that such appeals shall be taken, and such writs sued out, in the modes now provided by law or by rule. The language of the fourteenth, sixteenth, and thirty-fifth sections clearly implies that an assignee in bankruptcy shall establish his rights and enforce his remedies as other creditors establish and enforce theirs. And the fair construction of the first section is that, in cases of disputed title, unless it is otherwise specially provided, the proceedings shall be as in the circuit court, under the second section, in equity and by bill or petition. The tenth section of the act imposes upon the judges of the supreme court the duty of framing general orders, to regulate the practice and procedure of the district court in bankruptcy. No order has been framed to regulate the course of procedure in cases of disputed possession, pendente lite. There is, so far as I am aware, but one provision in the whole act for the determination of substantial rights, by informal or summary proceedings, and that provision is found in the sixth section, where the parties, by consent, submit to the jurisdiction, and present the issue informally, so far as the mode of procedure is concerned. to the decision of the court. For these reasons the motion in this case is overruled.

---

## Case No. 6,882.

### In re HUNT et al.

### [5 N. B. R. 433.] [1]

District Court, D. New Jersey. Oct. 17, 1871.

BANKRUPTCY—PETITIONING CREDITOR—PROVABLE DEBT—MERGER IN JUDGMENT—PREFERENCE—SURRENDER.

1. Creditors petitioned to have debtors adjudged bankrupts. The debt due the creditors had been merged in a judgment which was clearly a fraudulent preference. Held, that the debt having been thus merged it was not a provable debt, and a petition founded upon it could not be sustained.

2. In such a case, however, creditors will be allowed to surrender their preference, and upon their doing so, the acts of bankruptcy being confessed, an adjudication will be ordered.

[In bankruptcy. In the matter of M. Hunt and W. E. Hornell.]

NIXON, District Judge. Objections are made to an adjudication of bankruptcy in this case, because the petitioning creditor's debt is not one provable in bankruptcy. The petition alleges that the nature of the creditor's demand against the alleged bankrupts is, first, a promissory note dated February eighth, eighteen hundred and seventy-one, for one hundred and ninety-one dollars and ninety-seven cents, payable two months after date, and a book account for goods, wares and merchandise, sold and delivered by the petitioning creditors to the debtors, amounting in the aggregate to four hundred and seven-

---

[1] [Reprinted by permission.]

teen dollars and five cents: and that the acts of bankruptcy committed are (1) a general assignment of their property under the state law, and (2) the non-payment of commercial paper more than fourteen days after its maturity. The acts of bankruptcy are admitted, but the adjudication is resisted upon the ground that the debt of the petitioning creditors has been merged in a judgment; that a suit has been brought upon the said debt in the state court and a judgment obtained thereon against the debtors; that said judgment is still outstanding and a lien upon their property, and that the same was obtained by the creditors after they had reasonable cause to believe the debtors to be insolvent, and hence is a fraud upon the provisions of the bankrupt act [of 1867 (14 Stat. 517)]. This is an involuntary proceeding, and one of the facts necessary to exist in order that the court may have jurisdiction is that the petitioning creditor shall have a debt against the alleged bankrupt provable under this act amounting at least to two hundred and fifty dollars.

As this case is now presented to the court, the petitioning creditors have not a debt of this character. With a full knowledge that their debtors had committed an act of bankruptcy by allowing their commercial paper to go to protest, and not paying it within a period of fourteen days, and thus having reasonable cause to believe them to be insolvent, instead of taking their debtors into the court of bankruptcy, that their property might be administered and equally distributed according to the beneficient aims of the bankrupt act, they hurried into the state courts and obtained a judgment upon their claim hoping, in a race of diligence, to outstrip and obtain a preference over other creditors, contrary to and in fraud of its provisions. Finding that they were foiled in their endeavor to acquire a lien upon their debtors' property by the conveyance of all their estate to an assignee, for the benefit of their creditors, under the state law the petitioning creditors then filed their petition in bankruptcy in this court, against their debtors, alleging their debt to consist of the promissory note and book account, which had already been merged in the judgment then and now subsisting and outstanding against their debtors. The evidence of debt which the petitioning creditors have against the alleged bankrupts, is not the promissory note and book accounts, but the judgment in which they have merged, and the judgment obtained under these circumstances is clearly not a debt provable under the act, but is void as a fraudulent preference.

The petitioning creditors having placed themselves in this dilemma, is there no remedy for them? The answer to this question will be found in a lawful consideration of the provisions of the twenty-third and thirty-ninth sections of the act. By the twenty-third section it is provided that, "any person who, after the approval of this act, shall have accepted any preference, having reasonable cause to believe that the same was made or given by the debtor contrary to any provision of this act, shall not prove the debt or claim on account of which the preference was made or given, nor shall he receive any dividend therefrom, until he shall first have surrendered to the assignee all property, money, benefit or advantage received by him under such preference." In the thirty-ninth section it is enacted "that any person who, being bankrupt or insolvent, or in contemplation of bankruptcy or insolvency, shall make any payment, gift, grant, sale, conveyance or transfer of money or other property, * * * or procure or suffer his property to be taken on legal process with intent to give a preference to one or more of his creditors, or to defeat or delay the operation of this act, * * * shall be deemed to have committed an act of bankruptcy, * * * and shall be adjudged a bankrupt, * * * and if such person shall be adjudged a bankrupt, the assignee may recover back the money or other property so paid, conveyed, sold, assigned or transferred contrary to the act, provided, the person receiving such payment or conveyance had reasonable cause to believe that a fraud on this act was intended, and that the debtor was insolvent; and such creditor shall not be allowed to prove his debt in bankruptcy."

The provisions of these two sections, upon their face so contradictory, must, if possible, be so reconciled that both may stand. The most satisfactory way to do this is to hold that the prohibition of the creditor to prove his debt, in the thirty-ninth section, only applies to those cases where he has refused upon demand to surrender his preference and compelled the assignee by suit, to recover back the money or property so claimed and held by him in fraud of the provisions of the act. He may surrender his preference under either section, and prove his debt before a recovery against him by judgment, but after a recovery he is not permitted to prove under either. In re Montgomery [Case No. 9,728]; In re Davidson [Id. 3,599]. But this construction of the apparently contradictory provisions of these sections does not quite reach the difficulty in the present case. The surrender provided for is a surrender to the assignee. Can it be made by a petitioning creditor, when he files his petition and before an assignee has been appointed, so as to make his debt provable under the act? Looking at the spirit of the law and the design of the surrender, I am of the opinion that he can, by setting forth in his petition all the proceedings that have been had to obtain the preference, and by voluntarily surrendering such preference for the general benefit of the creditors of the estate. After the petition has been filed, the creditor himself and all his interest in the alleged bankrupt's property as well, are under the

control of the court, and the court is in a position to compel him, at any subsequent stage of the proceedings, to make good his tender, and to surrender to the assignee, before he shall participate in a dividend, and thus the object of the law, to wit, equality in the distribution of the assets, is secured.

In the present case, if the petitioning creditor shall amend his petition, setting forth to the court the judgment obtained and making a surrender of all preference under or by virtue of it, an order of adjudication will be made upon the acts of bankruptcy alleged and confessed. If not so amended, the proceedings do not disclose a provable debt under the act, and the petition must be dismissed with costs.

=====

## Case No. 6,883.

### In re HUNT.

[5 N. B. R. 493; [1] 4 Chi. Leg. News, 5; 2 Pac. Law Rep. 146.]

District Court. D. California. Sept. 30, 1871.

BANKRUPTCY—HOMESTEAD.

A bankrupt applied to the court in bankruptcy for an order to the assignee, requiring him to set apart certain real estate as his homestead, and for an injunction restraining a creditor who had recovered a judgment and issued an execution thereon prior to the bankruptcy, from proceeding to sell the property. The application was denied for the reasons that if the property in question be a homestead, the title is unaffected by the bankrupt act [of 1867 (14 Stat. 517)]. If it is not a homestead, the creditor who has a lien to its full value is the only person interested to establish the fact. If it has been wrongfully seized in execution, the bankrupt has the same rights before the state tribunals as any other person whom it is sought to deprive of a lawful homestead.

[Cited in Re Wyllie, Case No. 18,112; Re Everitt, Id. 4,579; Re McKenna, 9 Fed. 36.]

[In bankruptcy. In the matter of C. Hunt.]

HOFFMAN, District Judge. This was an application by the bankrupt for an order to the assignee requiring him to set apart certain real estate as the homestead of the bankrupt, and for an injunction restraining a creditor who had recovered a judgment against the bankrupt, and issued an execution thereon prior to the bankruptcy, from proceeding to sell the property. The register has reported that in his opinion the property in question has been duly declared a homestead and is exempt from forced sale. In this opinion I am inclined to concur, but I see no reason for making the order and issuing the injunction prayed for. If the property be the legally declared homestead of the bankrupt, no title to it passed to the assignee, and it was wholly unaffected by the assignment. The setting it apart by the assignee could therefore convey no additional title. It would only

amount, when approved by the court, to a declaration that this court, as a court of bankruptcy, has no concern with it.

The provisions of general orders in bankruptcy No. 19, requiring the assignee to report to the court the "articles set off to the bankrupt under the fourteenth section of the act, with the estimated value of each article," evidently refer to the "necessary household and kitchen furniture and other articles and necessaries not exceeding $500 in value," which the assignee is, by that section, required to "designate and set apart," and not to real estate held as a homestead, the title to which, as the act expressly declares, does not pass to the assignee and is not "impaired or affected by any of the provisions of the act." Undoubtedly if the assignee were proceeding to sell or to treat as assets property exempted from forced sale, the court, on the application of the bankrupt would restrain him. But in this case the assignee makes no such attempt, nor has he any interest in the question; for the property, if not a homestead, is subject to the judgment lien of a creditor for an amount which would absorb its proceeds. The real contest is between the bankrupt and the judgment creditor, and the application is an attempt to procure from the bankruptcy court a decision of a question which properly belongs to the tribunals of the state, under whose laws the homestead rights were acquired. I think it clear that no such use can or ought to be made of this court. A homestead is not a "necessary article" to be set off by the assignee. The provisions of the nineteenth rule are therefore inapplicable. The assignee makes his [2] claim to the property and if it be a homestead, the title to it is unaffected by the bankrupt act. If it be not a homestead, the creditor who has a lien to its full value is the only person interested to establish the fact. If it has wrongfully been seized in execution, the bankrupt has the same rights before the state tribunals as any person whom it is sought to deprive of a lawful homestead. The application is, therefore, refused, and the temporary injunction dissolved.

=====

## Case No. 6,884.

### In re HUNT.

[17 N. B. R. 205; [1] 35 Leg. Int. 71.]

District Court, D. New Jersey. Feb. 5, 1878.

BANKRUPTCY — PROOF OF DEBT — ASCERTAINMENT OF VALUE OF MORTGAGE SECURITY.

After the adjudication, a creditor who held a mortgage for fifteen thousand dollars on the bankrupt's real estate, had it sold at public auction and purchased it himself for one hundred and forty-two dollars and fifty cents. He then proved for the residue of the mortgage as an

---

[2] [4 Chi. Leg. News, 5, gives "no."]